UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAFECO INSURANCE COMPANY OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>PAUL BETENBAUGH, et al.,<br><br>　　　　　Defendants. | No. 2:21-cv-01761-TLN-CKD<br><br>**ORDER** |

This matter is before the Court on Plaintiff Safeco Insurance Company of America's ("Plaintiff") Motion for Summary Judgment. (ECF No. 25.) Defendant Paul Betenbaugh ("Defendant") filed an opposition.[1] (ECF No. 32.) Plaintiff filed a reply. (ECF No. 38.) Also before the Court is Defendant's Motion to Amend the Answer. (ECF No. 22.) Plaintiff filed an opposition. (ECF No. 27.) Defendant did not file a reply.[2] For the reasons set forth below the Court GRANTS in part and DENIES in part Plaintiff's motion for summary judgment and DENIES Defendant's motion to amend his answer.

---

[1]　The only other Defendant in this action, Dalas Gundersen, did not file an opposition.

[2]　On November 2, 2022, Defendant filed a motion to file a late reply and the proposed reply. (ECF Nos. 35, 36.) The Court granted Defendant's motion and ordered him to file the reply on or before November 4, 2022. (ECF No. 37.) Defendant never filed the reply as ordered. Therefore, the Court need not consider the reply. Even if the Court considered the reply, however, it does not alter the Court's determinations herein.

**I.     FACTUAL AND PROCEDURAL BACKGROUND**[3]

This insurance coverage dispute arises from a prior case entitled *Gundersen v. Betenbaugh, et al.*, in Glenn County Superior Court, Case Number 15-CV-01484 (the "Underlying Action"). (ECF No. 31 at 6.) Dalas Gundersen ("Gundersen") brought the Underlying Action against Edward Jones & Co., LP ("Edward Jones"), Lisa Rodriguez ("Rodriguez"), and Defendant. (*Id.* at 7.)

Gundersen and Defendant previously worked as financial advisors for Edward Jones. (ECF No. 38-1 at 2.) Edward Jones terminated Gundersen's employment in December 2014 and replaced him with Rodriguez. (*Id.* at 3.) When Edward Jones terminated Gundersen, Edward Jones distributed Gundersen's substantial book of business to other advisors, including Defendant and Rodriguez. (*Id.*) In May 2015, Gundersen started his own financial advisor practice, which engaged in direct competition with Edward Jones. (*Id.* at 5.) Around that time, Rodriguez received a client complaint, which Defendant believed Gundersen secretly wrote. (*Id.* at 36.) Defendant decided to create internet posts including Gundersen's telephone number to "annoy" Gundersen. (*Id.* at 9, 36.) In the fall of 2015, Gundersen began receiving unsolicited text messages and phone calls from men seeking sexual encounters on his business and personal cell phones. (*Id.* at 7, 37.) The messages were sent in response to the advertisements Defendant posted on the "men seeking men" section on Craigslist.com ("Craigslist"). (*Id.* at 37.)

Gundersen filed the Underlying Action in state court on September 29, 2015. (*Id.* at 6.) After several amended pleadings, the final claims asserted at trial were: (1) internet impersonation; (2) defamation; (3) false light; (4) negligent infliction of emotional distress; and (5) intentional infliction of emotional distress. (*Id.* at 36.)

Defendant is an insured under a Homeowners Policy and Umbrella Policy with Plaintiff and sought coverage under those policies for the Underlying Action. (*Id.* at 26, 29.) The Court will briefly summarize relevant facts about the insurance policies:

---

[3]     The following facts are undisputed unless otherwise noted. Although Defendant marks some of the following facts as "disputed" in his separate statement, Defendant recites these facts in his opposition. (ECF No. 32 at 6–12.) Accordingly, the Court finds the facts are not disputed.

### The Homeowners Policy

Plaintiff issued a Quality-Plus Homeowners Policy to Karen Betenbaugh, Policy Number OA3319225 ("the Homeowners Policy"). (ECF No. 38-1 at 26.) Defendant qualifies as an Insured under the terms of the Homeowners Policy. (*Id.*) Under Section II — Liability Coverages, Liability Losses We Cover, Coverage E — Personal Liability, the Homeowners Policy provides the following insuring agreement:

> If a claim is made or a suit is brought against any insured for damages because of bodily injury or property damage caused by an occurrence to which this coverage applies, we will:
>
> (1) pay up to our limit of liability for the damages for which the insured is legally liable; and
>
> (2) provide a defense at our expense by counsel of our choice even if the allegations are groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when the amount we pay for damages resulting from the occurrence equals our limit of liability.

(*Id.* at 26–27.) The Homeowners Policy defines "occurrence" to mean "an accident." (*Id.* at 29.) Further, the Homeowners Policy states coverage for personal injury does not include "injury arising out of the business pursuits of any insured." (*Id.* at 28.)

### The Umbrella Policy

Plaintiff also issued a Personal Umbrella Policy to Paul and Karen Betenbaugh, Policy Number UA3886335 ("the Umbrella Policy"). (*Id.* at 29.) The Umbrella Policy includes the following insuring agreement: "We will pay the ultimate net loss in excess of the retained limit that the insured is legally responsible for because of covered bodily injury, personal injury or property damage caused by an occurrence." (*Id.* at 30.) The Umbrella Policy defines "occurrence" as "an accident" or "an offense, committed during the coverage period, which results in personal injury." (*Id.* at 32–33.) The Umbrella Policy defines "personal injury" as "injury arising out of one or more of the following offenses: . . . libel, slander or defamation of character." (*Id.* at 33.) The Umbrella Policy states coverage does not include injury "arising out of the business pursuits of any insured." (*Id.* at 34–35.)

///

In January 2016, Defendant notified Plaintiff of the Underlying Action and sought defense coverage under the Homeowners Policy and Umbrella Policy. (*Id.* at 36.) In March 2017, Plaintiff issued a letter agreeing to defend Defendant in the Underlying Action, subject to a Reservation of Rights. (*Id.* at 38.) The matter eventually proceeded to trial. On September 1, 2021, the jury reached a unanimous verdict against Defendant. (*Id.* at 23.) On the verdict form, the jury marked "Yes" to two questions: (1) Was the conduct of Defendant internet impersonation; and (2) Was the conduct of Defendant Defamation OR False Light OR Negligent Infliction of Emotional Distress OR Intentional Infliction of Emotional Distress? (*Id.* at 44.) The jury also found Defendant engaged in the conduct with malice, oppression, or fraud. (*Id.* at 45.)

On September 27, 2021, Plaintiff filed the instant action against Defendant, alleging the following: (1) a claim for declaratory relief that it had no duty to defend Defendant under the Homeowners Policy; (2) a claim for declaratory relief that it had no duty to indemnify Defendant under the Homeowners Policy; (3) a claim for declaratory relief that it had no duty to defend Defendant under the Umbrella Policy; (4) a claim for declaratory relief that it had no duty to indemnify Defendant under the Umbrella Policy; and (5) a claim for reimbursement of defense fees and expenses. (ECF No. 1 at 17–22.) Defendant filed his answer on January 21, 2022. (ECF No. 14.) On September 27, 2022, Defendant filed the instant motion for leave to amend his answer to add counterclaims and parties to this action. (ECF No. 22.) On October 11, 2022, Plaintiff filed the instant motion for summary judgment. (ECF No. 25.) The Court first addresses Plaintiff's motion for summary judgment and then Defendant's motion for leave to amend.

**II.  PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

A.  Standard of Law

Summary judgment is appropriate when the moving party demonstrates no genuine issue of any material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis of its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file together with affidavits, if any,"

1 which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v.*
2 *Catrett*, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof
3 at trial on a dispositive issue, a summary judgment motion may properly be made in reliance
4 solely on the pleadings, depositions, answers to interrogatories, and admissions on file." *Id*. at
5 324 (internal quotation marks omitted). Indeed, summary judgment should be entered against a
6 party who does not make a showing sufficient to establish the existence of an element essential to
7 that party's case, and on which that party will bear the burden of proof at trial.

8 If the moving party meets its initial responsibility, the burden then shifts to the opposing
9 party to establish that a genuine issue as to any material fact does exist. *Matsushita Elec. Indus.*
10 *Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 (1986); *First Nat'l Bank of Ariz. v. Cities Serv.*
11 *Co.*, 391 U.S. 253, 288–89 (1968). In attempting to establish the existence of this factual dispute,
12 the opposing party may not rely upon the denials of its pleadings but is required to tender
13 evidence of specific facts in the form of affidavits, and/or admissible discovery material, in
14 support of its contention that the dispute exists. Fed. R. Civ. P. 56(c). The opposing party must
15 demonstrate that the fact in contention is material, *i.e.*, a fact that might affect the outcome of the
16 suit under the governing law, *Anderson v. Defendant Lobby, Inc.*, 477 U.S. 242, 248 (1986), and
17 that the dispute is genuine, *i.e.*, the evidence is such that a reasonable jury could return a verdict
18 for the nonmoving party. *Id*. at 251–52.

19 In the endeavor to establish the existence of a factual dispute, the opposing party need not
20 establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual
21 dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at
22 trial." *First Nat'l Bank of Ariz.*, 391 U.S. at 288–89. Thus, the "purpose of summary judgment is
23 to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for
24 trial.'" *Matsushita Elec. Indus. Co.*, 475 U.S. at 587 (quoting Rule 56(e) advisory committee's
25 note on 1963 amendments).

26 In resolving the motion, the court examines the pleadings, depositions, answers to
27 interrogatories, and admissions on file, together with any applicable affidavits. Fed. R. Civ. P.
28 56(c); *SEC v. Seaboard Corp.*, 677 F.2d 1301, 1305–06 (9th Cir. 1982). The opposing party's

evidence is to be believed and all reasonable inferences that may be drawn from the facts pleaded before the court must be drawn in favor of the opposing party. *Anderson*, 477 U.S. at 255. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. *Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898 (9th Cir. 1987). Finally, to demonstrate a genuine issue that necessitates a jury trial, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 586. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Id*. at 587.

           B.     Analysis

Plaintiff moves for summary judgment on Claims One through Four. (ECF No. 25.) More specifically, Plaintiff argues the Court should find as a matter of law that: (1) Plaintiff has no duty to defend or indemnify Defendant in the Underlying Action under the Homeowners Policy (Claims One and Two); and (2) Plaintiff has no duty to defend or indemnify Defendant in the Underlying Action under the Umbrella Policy (Claims Three and Four). (*Id.* at 18.) In opposition, Defendant argues there are genuine issues of material fact precluding summary judgment and alternatively, the Court should deny Plaintiff's motion pursuant to Rule 56(d).[4] (ECF No. 32.) The Court first addresses Defendant's Rule 56(d) argument and then addresses Plaintiff's duty to defend and duty to indemnify in turn.

                *i.*     Rule 56(d)

Defendant argues the Court should deny Plaintiff's motion pursuant to Rule 56(d) because Defendant wishes to pursue further discovery to support its proposed counterclaims. (ECF No. 32 at 24–25.) Defendant also argues he should be given the opportunity to depose Ian Curwood because Plaintiff failed to disclose Curwood in its initial disclosures. (*Id.*) In opposition, Plaintiff

---

[4] Defendant also argues Plaintiff's claims for declaratory relief as to its duty to defend are moot as Plaintiff already provided Defendant's defense at trial. (ECF No. 32 at 14–15.) The Court finds the claims are not moot because Plaintiff reserved its rights to reimbursement for defense fees and expenses. (ECF No. 25-3 at 157–173.) In addition, Plaintiff indicates it is still representing Defendant in the appeal of the Underlying Action. (ECF No. 38 at 10.)

1 argues the Court should deny Defendant's request for leave to allege counterclaims. (ECF No. 38

2 at 14.) Plaintiff also argues it properly disclosed Ian Curwood as the custodian of records and his

3 declaration is limited to authenticating discovery documents previously disclosed. (*Id.*)

4     Rule 56(d) provides: "If a nonmovant shows by affidavit or declaration that, for specified

5 reasons, it cannot present facts essential to justify its opposition, the court may . . . defer

6 considering the motion or deny it." Fed. R. Civ. P. 56(d). "To prevail under this Rule, parties

7 opposing a motion for summary judgment must make '(a) a timely application which (b)

8 specifically identifies (c) relevant information, (d) where there is some basis for believing that the

9 information sought actually exists.'" *Emp'rs Teamsters Local Nos. 175 and 505 Pension Trust*

10 *Fund v. Clorox Co.*, 353 F.3d 1125, 1129–30 (9th Cir. 2004) (citation omitted). "The burden is

11 on the party seeking additional discovery to proffer sufficient facts to show that the evidence

12 sought exists, and that it would prevent summary judgment." *Chance v. Pac–Tel Teletrac Inc.*,

13 242 F.3d 1151, 1161 n.6 (9th Cir. 2001).

14     Defendant's vague statement about wanting to depose Curwood fails to identify specific,

15 relevant information he seeks and how that information would preclude summary judgment.

16 Moreover, as will be discussed, the Court denies Defendant's motion for leave to allege his

17 proposed counterclaims, and thus there is no need to allow further discovery on that basis.

18     Accordingly, the Court DENIES Defendant's request under Rule 56(d).

19         *ii.    Duty to Defend*

20     In a duty to defend case, the party claiming coverage "must prove the existence of a

21 potential for coverage" under the policy terms. *Montrose Chem. Corp. of Cal. v. Superior Ct.*, 6

22 Cal. 4th 287, 300 (1993). In determining whether the insurer owes a duty to defend, courts

23 compare the allegations of the complaint and extrinsic evidence with the terms of the policy.

24 *Maryland Cas. Co. v. Nat'l Am. Ins. Co. of Cal.*, 48 Cal. App. 4th 1822, 1829 (1996). "The

25 absence of a duty to defend is established when the insurer shows that the underlying claim could

26 not come within the policy coverage by virtue of the scope of the insuring clause or the breadth of

27 an exclusion." *Total Call Internat. Inc. v. Peerless Ins. Co.*, 181 Cal. App. 4th 161, 167 (2010).

28 ///

1    Plaintiff argues Defendant cannot meet his burden to establish a duty to defend under the
2 Homeowners Policy or Umbrella Policy for two reasons: (1) Gundersen's injury arose out of
3 Defendant's business pursuits; and (2) Gundersen's injury was not caused by an "occurrence."
4 (ECF No. 25 at 18.)  The Court addresses Plaintiff's arguments in turn.

*a.   Business Pursuits*

Plaintiff argues there is no duty to defend because both the Homeowners Policy and the Umbrella Policy exclude coverage for injuries arising out of Defendant's "business pursuits." (ECF No. 25 at 19.)  Plaintiff cites the following evidence to support its contention that Defendant's conduct arose from his business pursuits: (1) allegations in the operative complaint in the Underlying Action that Defendant sought "to harass, intimidate, and defame [Gundersen] in an effort to injure Gundersen and to gain a competitive advantage in Glenn County's financial services market"; and (2) Defendant's declaration attesting that he posted the Craigslist ads because of his perception that Gundersen, his business competitor, was assisting a former client in complaining to Defendant's employer.  (*Id.* at 19–20.)

Plaintiff cites various cases to support its position.  Of those cases, *West American* is most relevant to the instant case.  *W. Am. Ins. Co. v. Cal. Mut. Ins. Co.*, 195 Cal. App. 3d 314 (1987) ("*West American*").  In *West American*, an insured homeowner allowed his employees to gather at his home after work on Fridays to drink and gamble while awaiting their paychecks.  *Id.* at 317–18.  On one such evening, a fight broke out between two of the employees.  *Id.* at 318.  The employees suffered injuries and sued the insured homeowner.  *Id.*  The insured homeowner demanded his two insurance companies defend and indemnify him in the lawsuits.  *Id.*

One of the insurance policies at issue excluded coverage for bodily injury "arising out of business pursuits." *Id.* at 318.  The *West American* court held there was no coverage under the policy because "there [was] no doubt [the insured] was engaged in a business pursuit" based on his testimony "that his sole purpose in permitting the Friday night custom was to foster better relations with his employees." *Id.*  The court noted "[e]ven if the Friday night gathering was partially motivated by social interests, the result would be the same" because "[n]othing in the insurance policy require[d] that the business pursuit be wholly business related." *Id.*

8

Defendant fails to address *West American* in his opposition. (*See* ECF No. 32 at 16–18.) However, taking Defendant's evidence as true and giving him the benefit of all reasonable inferences, the Court finds there are triable issues as to whether the business pursuit exception applies. (ECF No. 38-1 at 19.) Although the complaint in the Underlying Action alleged Defendant sought to gain a competitive advantage over Gundersen, there is conflicting evidence about Defendant's true motives for posting the Craigslist ads. For example, while Plaintiff quotes portions of Defendant's trial testimony wherein Defendant admits Gundersen was a business competitor, Defendant did not testify that he had a profit motive for posting the Craigslist ads. (*See* ECF No. 25-3 at 203–07, 214.) Nor does Defendant's declaration state he had a profit motive for posting the ads. (*See* ECF No. 25-6 at 177–78.) Rather, Defendant states in his declaration that he posted the ads because he was angry with Gundersen for filing a client complaint against Rodriguez, who Defendant considered to be a "good friend" and "like a sister" to him. (*Id.*) Moreover, Defendant cites portions of his trial testimony where he explicitly states he posted the ads — not to harm Gundersen's business — but because he felt Gundersen was bullying Rodriguez. (ECF No. 32-1 at 53, 55–62.) Unlike *West American*, where the insured homeowner's testimony left the court with "no doubt" that the Friday night gatherings were a business pursuit, the Court finds reasonable minds could differ as to whether Defendant posted the ads with some profit motive or purely for personal reasons.

Accordingly, the Court DENIES Plaintiff's motion for summary judgment as to the business pursuit exclusions in the policies.

*b.     "Occurrence"*

Plaintiff next argues there is no duty to defend under the Homeowners Policy or the Umbrella Policy because both policies only cover injuries caused by an "occurrence," which the policies define as an "accident." (ECF No. 25 at 21.) More specifically, Plaintiff argues Defendant's deliberate posting of the Craigslist ads that caused Gundersen's harm was not an "accident." (*Id.* at 21, 24.) The Court will address the Homeowners Policy and Umbrella Policy separately.

///

*1. Homeowners Policy*

In arguing Defendant's conduct was not an "accident" within the meaning of the Homeowners Policy, Plaintiff relies on *State Farm Gen. Ins. Co. v. Frake*, 197 Cal. App. 4th 568 (2011). (ECF No. 25 at 22.) In *Frake*, the court found an insurance company had no duty to defend an insured who intentionally struck his friend in the groin during horseplay because the insured's conduct did not constitute an "occurrence," which the policy defined as an "accident." 197 Cal. App. 4th at 580. The court explained the term "accident" does not apply to deliberate conduct that directly causes injury, regardless of whether the injury was intended. *Id.* at 580–81. The court stated, "This is not a case where some 'unexpected, independent, and unforeseen happening' in the causal chain produced the resulting harm" and "the mere fact that [the insured] did not intend to injure [his friend] did not transform his intentional conduct into an accident." *Id.* (citation omitted).

Defendant does not address *Frake* in his opposition. (*See* ECF No. 32.) Instead, Defendant argues: (1) Plaintiff stated in its Reservation of Rights letter there was potential coverage for the defamation claim in the Underlying Action; and (2) there is a genuine dispute as to whether certain damages were based on negligence theories. (*Id.* at 18–21.) Neither argument is persuasive.

As to the first argument, Defendant provides no authority to suggest that Plaintiff's indication about potential coverage for the defamation claim is material. As to the second argument, Defendant provides no authority to support his contention that ambiguity in the verdict form about whether the jury found him liable for negligence rather than an intentional tort is sufficient to preclude summary judgment. To the contrary, California cases makes clear that negligence is not synonymous with an "accident." *See Frake*, 197 Cal. App. 4th at 579–80 (finding insured's deliberate conduct was not an "accident" despite the insured only being found liable for negligence); *see also Uhrich v. State Farm Fire & Cas. Co.*, 109 Cal. App. 4th 598, 611 (2003) ("[The insured] cannot invoke coverage simply by pleading 'negligence' in the complaint, nor by assuming all assaults, defamations and so forth must be covered, simply because those labels are included in the policy definition of personal injury.").

10

The undisputed evidence establishes Defendant's conduct was deliberate and caused Gundersen's harm. (ECF No. 38-1 at 9, 36 (acknowledging Defendant posted the Craigslist ads to "annoy" Gundersen).) While Defendant argues his conduct was just a prank, it is immaterial whether Defendant intended to injure Gundersen. *Frake*, 197 Cal. App. 4th at 579. What matters is Defendant's deliberate conduct caused Gundersen's harm, and Defendant provides no evidence to suggest that there was some "unexpected, independent, and unforeseen happening" in the causal chain. *Id.* For these reasons, the Court concludes Defendant's conduct was not an "accident" and thus Gundersen's harm was not caused by an "occurrence."

Therefore, the Court finds Plaintiff has no duty to defend under the Homeowners Policy and GRANTS Plaintiff's motion for summary judgment as to Claim One.

*2. Umbrella Policy*

Unlike the Homeowners Policy which defines an "occurrence" only as an "accident," the Umbrella Policy defines an "occurrence" as *either* an "accident" *or* "an offense, committed during the coverage period, which results in personal injury." (ECF No. 38-1 at 32–33.) Defendant points out this distinction in his opposition, and Plaintiff seemingly acknowledges the oversight and offers a new argument for finding no coverage under the Umbrella Policy in its reply. (ECF No. 32 at 22; ECF No. 38 at 10 (arguing Exclusion 2.b in the Umbrella Policy precludes coverage for personal injury "arising out of oral or written publication of material, if done by or at the direction of an insured with knowledge of its falsity").)

The Court declines to consider an argument raised for the first time in reply, especially when Plaintiff offers no reason why it could not have made this argument sooner. *See Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) ("The district court need not consider arguments raised for the first time in a reply brief"). Absent adequate briefing, it is unclear whether there is coverage under the alternative definition of "occurrence" in the Umbrella Policy. As such, the Court cannot say as a matter of law Plaintiff has no duty to defend under that policy.

The Court thus DENIES Plaintiff's motion for summary judgment as to Claim Three.

///

///

11

### C. Duty to Indemnify

Plaintiff argues there is no duty to indemnify under either policy because: (1) there was no duty to defend; (2) the judgment and theories of liability inherent to the judgment were limited to Defendant's non-accidental conduct arising out of his business pursuits; and (3) California Insurance Code § 533 ("§ 533") eliminates any duty to indemnify. (ECF No. 25 at 24.)

For the reasons already discussed, there is no duty to defend — and thus no duty to indemnify — under the Homeowners Policy. *See Certain Underwriters at Lloyd's of London v. Superior Court*, 24 Cal. 4th 945, 961 (2001) (explaining there is no duty to indemnify when there is no duty to defend).

In addition, the Court agrees with Plaintiff that § 533 bars indemnification in this case. Section 533 provides, "An insurer is not liable for a loss caused by the wilful act of the insured." Cal. Ins. Code § 533. Section 533 "reflects a fundamental public policy to deny insurance coverage for wilful wrongs." *Downey Venture v. LMI Ins. Co.*, 66 Cal. App. 4th 478, 499 (1998). "It is an implied exclusionary clause which, by statute, must be read into all insurance policies." *Id.* at 499–500. A "wilful act" under § 533 includes either "an act deliberately done for the express purpose of causing damage or intentionally performed with knowledge that damage is highly probable or substantially certain to result." *Id.* at 500. "[S]ection 533 precludes indemnification, whether or not the insured subjectively intended harm, if the insured seeks coverage for an intentional, wrongful act that is inherently and necessarily harmful." *Id.* at 501.

Defendant again argues there is insufficient evidence that his conduct was intentional rather than merely negligent. (ECF No. 32 at 23–24.) As discussed, the undisputed evidence shows Defendant intentionally posted the Craigslist ads to "annoy" Gundersen. (ECF No. 38-1 at 9.) Harm was at the very least "substantially certain to result" from posting the ads. *Downey Venture*, 66 Cal. App. 4th at 500. Moreover, the jury found Defendant's conduct was done with "malice, oppression, or fraud," which further establishes willfulness. (ECF No. 38-1 at 23.)

For these reasons, the Court finds Plaintiff has no duty to indemnify under the Homeowners Policy or Umbrella Policy. Therefore, the Court GRANTS Plaintiff's motion for summary judgment as to Claims Two and Four.

### III. DEFENDANT'S MOTION TO AMEND ANSWER

#### A. Standard of Law

Granting or denying leave to amend rests in the sound discretion of the trial court. *Swanson v. U.S. Forest Serv.*, 87 F.3d 339, 343 (9th Cir. 1996). Once the court issues a scheduling order that establishes a timetable to amend the complaint, Rule 16 governs any amendments to the complaint past the deadline established in the order. *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1294 (9th Cir. 2000). To allow for amendment under Rule 16, a plaintiff must show good cause for not having amended the complaint before the time specified in the scheduling order. *Id*. The good cause standard primarily considers the diligence of the party seeking the amendment. *Johnson v. Mammoth Recs., Inc.*, 975 F.2d 604, 609 (9th Cir. 1992).

Even if the good cause standard is met under Rule 16, the Court has the discretion to refuse amendment if it finds reasons to deny leave to amend under Rule 15(a). *Johnson*, 975 F.2d at 610. Under Rule 15(a)(2), "a party may amend its pleading only with the opposing party's written consent or the court's leave," and the "court should freely give leave when justice so requires." The Ninth Circuit has considered five factors in determining whether leave to amend should be given: (1) bad faith; (2) undue delay; (3) prejudice to the opposing party; (4) futility of amendment; and (5) whether plaintiff has previously amended his complaint." *In re W. States Wholesale Nat'l Gas Antitrust Litig.*, 715 F.3d 716, 738 (9th Cir. 2013) (citation omitted).

#### B. Analysis

Defendant requests leave to amend its answer to assert new counterclaims and add parties to this action. (ECF No. 24.) Defendant seeks to allege the following state law claims against Plaintiff and the attorneys who represented him in the Underlying Action: (1) professional negligence; (2) breach of fiduciary duty; (3) breach of contract; (4) fraudulent concealment; and (5) breach of the implied covenant of good faith and fair dealing. (ECF No. 22-6.) Defendant argues he acted diligently in seeking leave to amend as he was not aware of the facts underlying the new counterclaims until ten weeks before moving to amend. (ECF No. 24 at 14.)

Assuming without deciding there is good cause to modify the Scheduling Order under Rule 16, the Court nonetheless denies Defendants' motion after considering all the relevant

1   factors under Rule 15.  Most notably, allowing Defendant to allege new counterclaims and add
2   parties at this late stage would cause undue prejudice to Plaintiff.  *Jackson v. Bank of Haw.*, 902
3   F.2d 1385, 1387 (9th Cir. 1990) ("Prejudice to the opposing party is the most important factor" in
4   deciding whether to give leave to amend).  Discovery is closed, and all but two of Plaintiff's
5   claims have been resolved in this Order.  Further, Defendant's proposed amendments would
6   significantly expand the scope of this declaratory relief action that currently only involves very
7   narrow questions about insurance coverage.  *See Morongo Band of Mission Indians v. Rose*, 893
8   F.2d 1074, 1079 (9th Cir. 1990) (denying a motion for leave to amend to add new claims because
9   the amendment would "radically shift" the nature of the case, requiring defendants to undertake
10  an entirely new course of defense at a late hour); *Xyratex Tech., Ltd. v. Teradyne Inc.*, No. CV 08-
11  04545 SJO (PLAx), 2009 WL 10702550, at *8 (C.D. Cal. Aug. 20, 2009) (denying the
12  defendant's motion for leave to file an amended answer to add five counterclaims that would
13  "substantially change the nature" of the litigation and reflect "'classic sources of prejudice' under
14  Ninth Circuit precedent").

15        The Court is also concerned Defendant is acting in bad faith to eliminate this Court's
16  jurisdiction by adding new parties to this action.  *See Hip Hop Beverage Corp. v. RIC*, 220 F.R.D.
17  614, 622 (C.D. Cal. 2003) ("Courts have understood 'bad faith' to mean such tactics as, for
18  example, seeking to add a defendant merely to destroy diversity jurisdiction.").  Indeed,
19  Defendant readily acknowledges that adding the proposed new parties to this action "might
20  destroy diversity and divest the Court of subject matter jurisdiction," in which case he
21  recommends the Court dismiss the action.  (ECF No. 24 at 19.)

22        As more evidence of potential bad faith, Plaintiff notified the Court that Defendant filed
23  an identical action in state court a week before filing his motion to amend.  (ECF No. 38 at 14
24  (citing ECF No. 38-3).); *see N.H. Ins. Co. v. C'est Moi, Inc.*, No. SACV050243DOCRNBX, 2005
25  WL 8165668, at *3 (C.D. Cal. Oct. 31, 2005) (finding the defendant's conduct of "fil[ing] its
26  compulsory counterclaims in state court by initiating a separate action rather than filing them in
27  the instant [federal] action . . . [as] an indicator of its bad faith . . . weigh[ing] against granting
28  [the defendant's] motion for leave to amend").  To the Court's knowledge, Defendant never

mentioned the identical state court action in any of his filings in the instant case, which bolsters the Court's belief that Defendant is acting in bad faith.

Accordingly, even assuming there is no undue delay and amendment would not be futile, the Court DENIES Defendant's motion for leave to amend based on the considerable prejudice to Plaintiff and strong indicators that Defendant is acting in bad faith.

### IV. CONCLUSION

For the foregoing reasons, the Court GRANTS in part and DENIES in part Plaintiff's Motion for Summary Judgment (ECF No. 25) as follows:

1. The Court DENIES Plaintiff's motion for summary judgment as to Claim Three; and
2. The Court GRANTS Plaintiff's motion for summary judgment as to Claims One, Two, and Four.

The Court also DENIES Defendant's Motion for Leave to Amend the Answer. (ECF No. 22.) The parties are ORDERED to file a Joint Status Report within thirty (30) days of the electronic filing date of this Order indicating their readiness to proceed to trial on the remaining claims (Claims Three and Five) and proposing trial dates.

IT IS SO ORDERED.

Date: September 28, 2023

Troy L. Nunley
United States District Judge

15